IN THE MATTER OF THE APPLICATION OF THE LEHIGH
VALLEY RAILROAD COMPANY OF NEW JERSEY TO
ACQUIRE LANDS OF THE R. G. PACKARD COMPANY
ET AL.

Submitted December 2, 1909—Decided June 20, 1910.

1. Where a railroad company acquires land for its right of way
   under condemnation proceedings. the result of which divides the
   land of an individual so as to leave portions of it on both sides of
   the land taken for the right of way, subject to the duty of pro-
   viding a convenient wagon way over or under the land condemned
   in order that the owner may pass to and from the severed parcels,
   such taking does not destroy the common ownership of the whole,
   nor are the separated parcels, in a subsequent proceeding to con-
   demn one of them. to be considered as having no relation to each
   other, or as held by different owners.
2. Such right of passage preserves the common ownership, and an
   instruction to the jury, on the trial of an appeal from the award
   of commissioners appointed in condemnation proceedings for the
   taking of one of such parcels, that they must not consider the fact
   that the owner has title to the land on the other side of the right
   of way formerly taken, with the right of a way to pass from one
   to the other. but treat the two parcels as if they were owned by
   strangers, is erroneous.

On error to the Supreme Court, whose opinion is reported
in 48 *Vroom* 239.

For the railroad company, *Collins & Corbin.*

For the landowners, *Hartshorne, Insley & Leake.*

The opinion of the court was delivered by

BERGEN, J.   The undisputed facts pertinent to the ques-
tions raised by the assignments of error in this cause are, that
the R. G. Packard Company is the owner of a considerable
tract of land adjoining, on its easterly side, New York bay,
and from thence extending westerly into, and forming a part
of, the city of Bayonne; that prior to the time when that com-
pany acquired its title, a right of way was condemned by what

is called the Bergen Neck Railroad Company running near to, and parallel with, the shore front; that after this condemnation, but prior to the purchase of the whole tract by the present owners, another right of way, running nearly north and south, was condemned by the Kill von Kull Railroad Company, since merged with the Lehigh Valley Railroad Company of New Jersey; that the effect of these condemnations was to separate the whole tract into three parcels, one lying to the east of the line first condemned, another between the two lines, and the third west of the right of way of the last-named company; that the latter parcel has since been taken under condemnation proceedings instituted by the Lehigh Valley Railroad Company of New Jersey, the value of the land and damages for which is the subject-matter of the present controversy; that the whole of the original tract was, at the time of the condemnation last mentioned, owned by the R. G. Packard Company, subject to the rights of the two railroad companies acquired by condemnation prior to the purchase by the R. G. Packard Company; that both companies were organized under our General Railroad act, and are subject to its provisions.

The questions presented for determination arose at the trial of an issue framed in the Hudson Circuit Court for the purpose of ascertaining the amount to be paid to the landowner, for the value of the land taken and damages sustained, as provided by law (*Pamph. L.* 1900, *p.* 79), the landowner having in due season appealed from the award of the commissioners appointed to examine and appraise the land and to assess the damages. At the trial the landowners offered testimony tending to show that the whole tract was adapted as a unit to a special use that would add to its value because the owner had constructed a ship basin on the shore front, and had partly dredged a channel from the basin to deep water in the bay, all of which it was claimed tended to enhance the value of the land taken, because it could be used in connection with such improvements; and further, that the whole tract was specially adapted for use as a place of deposit for the material dredged from the basin; that such filling would greatly add to its

value, and that the land taken had a connection with the shore front land which should be considered in estimating its value. These offers were refused, and the court charged the jury that in fixing the damages, "You will consider that the property to the east of what is known as the Kill von Kull railroad does not belong to Mr. Packard at all. You must not confuse this case by reason of his owning the property to the east. He has no claim upon you for a verdict for a greater amount than if the property belonged to a stranger. The reason of that is this, that in my judgment the law is settled that the building of the Kill von Kull railroad across the property of Mr. Packard, and his being paid, as the law presumes he was paid when that railroad was built, separates it from the other tract, and consequently your attention must be directed solely to the tract of land to the west of the Kill von Kull railroad." The direction to the jury, deducible from this charge, is that when a railroad company, organized under our General Railroad act, condemns land of an individual for railroad use, so located as to leave portions of the original tract, out of which it is taken, on both sides of it, that in a subsequent proceeding to condemn one of the remaining tracts, any relation which one may bear to the other, while held by the same owner, is not an element to be considered in determining the value of the land taken and the damages sustained thereby, and that the separate parcels are to be treated as if held by strangers in title. A considerable part of the testimony overruled was offered for the purpose of showing the improvements on the shore front, and the advantage which the land taken would derive therefrom when used in connection with it and its improvements, because of a right of passage over the railroads from one parcel to another. This evidence was rejected, as well as that offered to prove the boundaries of the whole tract, upon the theory that the landowner was confined to damages resulting from the taking of the particular parcel described in the condemnation proceedings, and that his ownership of land on the opposite side of the Kill von Kull railroad could not be considered by the

jury. This case was removed from the Hudson Circuit Court by writ of error to the Supreme Court, where the judgment was affirmed, for the reason that the excluded evidence was offered to show that the effect of the present taking would necessarily be to diminish the value of so much of the original tract as was located east of the two railroads, and also that on account of the previous condemnation proceedings the three parcels became as completely segregated from one another as if the separation had been made by the laying out and opening of streets through the tracts, the result being an affirmance of the rule of law applied by the trial judge. It does not appear to us that the rejected testimony was offered to show that the effect of the present taking would necessarily be to diminish the value of the lands not taken, but that its purpose was to show that the land taken had a greater value because an advantageous use could be made of it in connection with the other parcels. Nor do we agree with the Supreme Court on the second proposition. The plaintiff in error does not claim that if the railroad land, which separates the whole tract into three parcels, was owned by the companies free from any easement, the rule of law applied below was improper, but seeks to support his writ upon the ground that when the two parcels were taken by condemnation an easement or passageway was reserved by law, either over or under the lands condemned, which entitles him to cross and recross the condemned tracts to and from the separated parcels, in order that they might be used in conjunction, one with the other, and relies upon section 27 of "An act concerning railroads" (*Pamph. L.* 1903, *p.* 645), which is a substantial reproduction of the statute in force when the former condemnations were made. The act then, and now, requires all railroad companies whose road "shall intersect any farm or land of any individual, to provide and keep in repair suitable and convenient wagon ways over, under and across said railroad." Under this act the landowner in the present case was entitled to have provided a wagon way either over, under or across the railroads, by means of which he could use the whole tract, not

taken by the railroads, as a single farm or tract. In *Marino* v. *Central Railroad Co.*, 40 *Vroom* 628, Chancellor Magie, speaking for this court in construing a similar provision in the charter of the Central Railroad Company of New Jersey, said: "There was imposed upon that railroad company a positive duty to provide and keep in repair a suitable wagon way over or under its railroad, so that Caleb Miller (the former owner of the whole tract) might pass the same, and that the evident purpose of the act was to permit such an owner to have convenient access from and to such portions of his land as were intersected and separated by the railroad." In that case it was decided that when the land lying upon opposite sides of the railroad passed to different owners, the right ceased, and this was because the common ownership was destroyed. Such a right of passage preserves a common ownership in the whole tract, and a condemnation of a strip of land across it, subject to such right of passage, does not divide the original tract into parcels having no relation to each other. There being a common ownership in the R. G. Packard Company, of the three parcels, it was therefore competent to show any fact which would add value to the land taken because of such ownership, and the use to which it might be put in connection with other parcels so held in common. The right of passage afforded the landowner an opportunity to use the lands taken in these proceedings in connection with the land not taken, and although, perhaps, to some extent restricted, it was an advantage which added a value it would not possess without it, otherwise the statutory imposition upon the railroad company to provide it would be useless. What such additional value is depends upon the use to which the land taken may be put in connection with the land to which it is contiguous by means of the wagon way.

The refusal to admit testimony tending to show the relation of the land taken to the remaining land, and its value when used, to the extent afforded by the easement, in conjunction with the other land held in common with it, was an error injurious to the landowner, and the charge of the court based upon such ruling is also erroneous.

For the reasons given this judgment cannot be sustained, and it is therefore reversed and a *venire de novo* awarded.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, GARRISON, PARKER, BERGEN, VOORHEES, MINTURN, BOGERT, VREDENBURGH, VROOM, GRAY, CONGDON, JJ.    11.